UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHALL WEXLER, | Case No.  25-cv-00377-EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND** |
| REGENTS UNIVERSITY OF CALIFORNIA, et al., | |
| Defendants. | Docket Nos. 29, 37 |

Plaintiff Marshall A. Wexler is a pro se litigant.[1]  He has sued the Regents of the University of California (erroneously named as UCSF Dental) and three individuals who worked at UCSF Dental at the time he received treatment.[2]  Previously, Judge Breyer granted the Regents' motion to dismiss.  *See* Docket No. 18 (order).  He also issued two orders denying Mr. Wexler's motion for leave to amend.  *See* Docket Nos. 22, 28 (orders).  Now pending before the Court is (1) the individual defendants' motion to dismiss and strike and (2) a third motion to amend filed by Mr. Wexler.  Having considered the parties' briefs, the Court finds this matter suitable for resolution without oral argument.  The motion to dismiss and strike is **GRANTED** in part, and the motion to amend is **DENIED** in part.

/ / /

/ / /

---

[1] Although proceeding pro se, Mr. Wexler is an attorney licensed by the state of California.  *See* Defs.' RJN.

[2] The three individuals are: Kristi Abrahamsen, Supritha Komarisetty, and Mariam Abusharar (erroneously named as Mariam z2640).

## I.    FACTUAL & PROCEDURAL BACKGROUND

A.    Complaint

In the operative complaint, Mr. Wexler alleges as follows.

On July 9, 2024, Mr. Wexler went to UCSF Dental for a routine cleaning, examination, and x-rays. *See* Compl. at 3 (¶ 5). Dr. Komarisetty, a student dentist, treated him, and Dr. Abusharar, another student dentist, acted as an assistant. *See* Compl. at 1 (¶¶ 4-5); Compl. at 3 (¶ 6). *But see* Compl. at 3 (¶ 10) (also suggesting that Dr. Abusharar supervised Ms. Komarisetty). The clinical supervisor was Ms. Abrahamsen. *See* Compl. at 1 (¶ 3).

Although Mr. Wexler was scheduled for only a routine cleaning, examination, and x-rays, he "was subjected [instead] to a . . . D0180 periodontal exam." Compl. at 3 (¶ 8). The providers did not explain the periodontal exam to him prior to conducting it, and Mr. Wexler did not consent to the periodontal exam. *See* Compl. at 3 (¶ 8); *see also* Compl. at 4 (¶ 13) (alleging that he was "not adequately informed about its purpose or potential risks"). In addition, the periodontal exam was painful (*e.g.*, it involved "excessive probing of [his] gums" and use of a bite plate) and further was unnecessary (*e.g.*, it involved 19 x-rays). Compl. at 3-4 (¶¶ 9-11, 13); *see also* Compl. at 9 (¶ 16). The providers deliberately made the treatment painful. *See* Compl. at 4 (¶ 13). The appointment lasted approximately three hours. *See* Compl. at 4 (¶ 12).

In addition, during the treatment, Dr. Komarisetty made an offensive statement ("white people don't have anxiety") and further made an inappropriate remark (calling Mr. Wexler "attractive"). *See* Compl. at 5 (¶ 17). According to Mr. Wexler, the offensive statement – made after he told Dr. Komarisetty that he is Jewish – reflected animus on the basis of his Jewish identity. *See* Compl. at 8 (¶ 8); Compl. at 15 (¶ 10).

Mr. Wexler also claims that he was subjected to the painful and unnecessary periodontal exam because of the providers' animus against Jewish persons. *See* Compl. at 12 (¶ 30); *see also* Opp'n at 11 (asserting that "Abusharar" is an Arabic name). As alleged in the complaint:

> 30.    [Mr. Wexler] believes these procedures were part of an informal or unacknowledged experimental protocol intended

2

to test the limits of patient tolerance[3] or to replicate alleged practices attributed to a deceased Jewish dentist in El Cajon, California, [Ben Harouni] who was reportedly murdered for mistreatment of the murderer [his patient], so that [Defendants] can help bolster their own theory between fellow students, and the murderer[']s family and community supporters that the murder of the Jewish Dentist, Ben Harouni, in San Diego by a former patient Mohammed Abdulkareem, was not terrorism motivated by Anti Semitism, because Abdulkareem was merely a disgruntled patient.

31.    This event was surely in the minds of the Islamic student dentists at the California Dentist school, because Plaintiff, who is not a dentist, was aware of it because he identifies as Jewish.

Compl. at 12 (¶ 30).

Based on, *inter alia*, the above allegations, Mr. Wexler has asserted both federal and state law causes of action.  They are as follows:

(1)    Intentional infliction of emotional distress.

(2)    Discrimination based on race, ethnicity, and religion in violation of the Unruh Civil Rights Act.  *See* Cal. Civ. Code § 51 (providing that "[a]ll persons with the jurisdiction of [California] are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, [etc.] are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever").

(3)    Assault and battery.

(4)    Breach of contract (in bad faith).

(5)    Unfair business practices in violation of California Business & Professions Code § 17200.

(6)    "Medical experimentation and lack of informed consent."[4]

---

[3] *See also* Prop. FAC ¶ 43 (alleging that Ms. Komarisetty took his blood pressure before conducting the examination – "a medically unnecessary step for a routine cleaning" – because she wanted to "determine whether [he] could physically withstand the calculated torture from the deliberate puncturing of Plaintiff's cranial nerves in his mouth with her dental probe for no medical purpose but for her own gratification to inflict pain that followed").

[4] In his proposed amended complaint, Mr. Wexler cites California Health & Safety Code §§ 24170 *et seq.* (the Protection of Human Subjects in Medical Experimentation Act).

3

(7)  Discrimination based on race, ethnicity, and religion in violation of the Civil Rights Act. *See* 42 U.S.C. § 2000a(a) (providing that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin").

(8)  Violent act motivated by discrimination (based on race, ethnicity, and race) in violation of the Ralph Act. *See* Cal. Civ. Code § 51.7(b)(1) (providing that "[a]ll persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51"); *id.* § 51(b) (providing that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, [etc.] are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever").

(9)  Interference with civil rights (the "right to receive equitable and nondiscriminatory healthcare") by threats, intimidation, or coercion in violation of 42 U.S.C. § 1985. *See* 42 U.S.C. § 1985(3) (providing for a cause of action where "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws").

(10)  Retaliation in violation of the First Amendment (after Mr. Wexler "assert[ed] his rights to equitable healthcare and express[ed] his concerns about discrimination").

4

B.      Procedural History

After Mr. Wexler filed his suit, the Regents moved to dismiss the complaint. Judge Breyer granted that motion, holding that the Regents were protected by Eleventh Amendment immunity. *See* Docket No. 18 (order).

Mr. Wexler subsequently moved to amend his complaint. Because the proposed amended complaint continued to name UCSF Dental (*i.e.*, the Regents) as a defendant, Judge Breyer denied the motion to amend. *See* Docket No. 22 (order). Mr. Wexler responded by filing a second motion for leave to amend, but Judge Breyer found the motion "procedurally deficient because he has not attached to his motion a proposed amended complaint." Docket No. 28 (Order at 1). Judge Breyer acknowledged Mr. Wexler's assertion that the Regents had waived sovereign immunity because they received ACA funds but stated that he could not "evaluate the adequacy of such an assertion in a vacuum." Docket No. 28 (Order at 1). The denial of the motion to amend was without prejudice.

The instant action was thereafter reassigned from Judge Breyer to Judge Thompson, and then to the undersigned. The Court now has before it (1) the individual defendants' motion to dismiss and strike and (2) Mr. Wexler's third motion for leave to amend.

## II.      DISCUSSION

A.      Motion to Dismiss and Strike

1.      Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a cause of action for failure to state a claim for relief. To overcome a Rule 12(b)(6) motion after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

5

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

While Rule 12(b)(6) allows a defendant to move to dismiss based on failure to state a claim for relief, Rule 12(f) provides that a defendant may move to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Ninth Circuit, however, has held that where a defendant moves to strike a remedy such as punitive damages on the basis that it is precluded as a matter of law, the motion is properly construed as a 12(b)(6), and not a 12(f), motion. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971, 974 (9th Cir. 2010) ("hold[ing] that Rule 12(f) . . . does not authorize a district court to strike a claim for damages on the ground that such damages are precluded as a matter of law"; stating that an argument of that nature is better raised through a 12(b)(6) or summary judgment motion).

2.    Federal Claims

In the pending motion to dismiss and strike, the individual defendants challenge each of the causes of action asserted by Mr. Wexler, as well as some of the remedies he seeks (*i.e.*, punitive damages, injunctive relief, restitution/disgorgement, and attorneys' fees). As indicated above, the bulk of Mr. Wexler's claims are predicated on state law. There are only three federal causes of action pled. However, the Court begins its analysis with the federal claims as they give rise to subject matter jurisdiction in this Court. If Mr. Wexler fails to state a claim for relief for all federal causes of action, then the Court has the discretion to decline supplemental jurisdiction over the state law claims. *See generally* 28 U.S.C. § 1367(c).

a.    Seventh Cause of Action: Discrimination in Violation of § 2000a

Section 2000a provides in relevant part as follows: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or

segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Mr. Wexler alleges that the individual defendants violated § 2000a because they discriminated against him on the basis of his race, ethnicity, or religion by making disparaging comments ("white people don't have anxiety") and by subjecting him to painful and unnecessary procedures without informed consent. *See, e.g.*, Compl. at 14 (¶¶ 3-4).

As an initial matter, the Court agrees with the individual defendants that the claim as to Dr. Abusharar and Ms. Abrahamsen must be dismissed because Mr. Wexler has failed to clearly allege that either individual engaged in the alleged misconduct identified above. Dr. Komarisetty alone is alleged to have made the statement that "white people don't have anxiety." And although there are general and conclusory allegations that Dr. Abusharar assisted Dr. Komarisetty, the nature of that assistance is never clarified. There do not appear to be any allegations at all about Ms. Abrahamsen.

In addition, even if all three individuals were alleged to have engaged in all or some of the alleged misconduct, Mr. Wexler has still failed to state a claim for relief. The single comment that "white people don't have anxiety" does not, as a matter of law, give rise to a hostile environment on the basis of race, ethnicity, or religion. *See Bradley v. Blue Chip Casino*, No. 2:09-CV-154 JVB, 2009 U.S. Dist. LEXIS 89316, at *5-6 (N.D. Ind. Sept. 25, 2009) (dismissing § 2000a claim because, *inter alia*, even if a statement could be attributed to the defendant, "one comment does not rise to the level of racial discrimination"); *cf. Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (in discussing a hostile work environment under Title VII, noting that "'[n]ot every insult or harassing comment will constitute a hostile work environment'" and that the "'ordinary tribulations of the workplace [include] the sporadic use of abusive language, gender-related jokes, and occasional teasing'"; adding that, for a single incident to give to a hostile work environment, "it 'must be extremely severe'").

Furthermore, the allegations that the individual defendants intentionally subjected Mr. Wexler to painful and unnecessary procedures because of his race, ethnicity, or religion are entirely speculative. The single comment that "white people don't have anxiety" is not enough to infer animus. And Mr. Wexler's suggestion that the individual defendants are Islamic is not

7

supported by any concrete factual allegations. More important, even if the individual defendants are Islamic, that fact in and of itself is not sufficient to give rise to a plausible claim that the individual defendants are thereby anti-Semitic. In addition, Mr. Wexler's contention that the individual defendants must have known about the incident where a Jewish dentist, Mr. Harouni, was killed in El Cajon, California, is also unsupported by any concrete factual allegations. Nor is there any plausible nexus to the El Cajon incident and the defendants in this case. Thus, any assertion that the individual defendants' conduct was some kind of "payback" for what happened to Mr. Harouni is speculation.

Finally, Mr. Wexler's § 2000a claim fails because, even if he did sufficiently plead a plausible claim for relief, the only remedy available would be injunctive-type relief. *See Jones v. Brouwers*, 859 Fed. Appx. 793, 793 (9th Cir. 2021) (stating that "damages are not available for violations of 42 U.S.C. § 2000a *et seq.*"); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1120 n.6 (9th Cir. 2000) (stating that, under Title II of the Civil Rights Act, "a private individual can only obtain 'preventive relief,' which means injunctions and temporary restraining orders[;] damages are not available"); *see also Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (stating that, "[w]hen a plaintiff brings an action under [Title II of the Civil Rights Act], he cannot recover damages"). Although Mr. Wexler's complaint states that he seeks injunctive relief to "prohibit[] Defendants from engaging in discriminatory and unethical conduct," Compl., Prayer for Relief ¶ G, he fails to allege that he has standing to seek prospective injunctive relief. *See* Perdomo v. Noem, 148 F.4th 656, 673 (9th Cir. 2025) ("To have standing to seek an injunction against future unlawful conduct, a plaintiff must show a 'sufficient likelihood' that they will suffer a similar injury in the future.").

b.    Ninth Cause of Action: Interference with Civil Rights in Violation of § 1985

Section 1985 prohibits a conspiracy to interfere with a person's civil rights. It provides, for example, for a cause of action where "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. §

8

United States District Court
Northern District of California

1985(3). In his complaint, Mr. Wexler alleges that the individual defendants violated § 1985 by violently acting "to prevent him from exercising his right to receive equitable and nondiscriminatory healthcare and to retaliate against [him] for having attempted to exercise such a right, and for being a Jew." Compl. at 16 (¶ 18). As reflected by this allegation, the crux of the § 1985 claim is (similar to above) discrimination on the basis of race, ethnicity, or religion. Accordingly, for much of the same reasons that the § 2000a claim fails, the § 1985 claim fails.

Moreover, the § 1985 claim is deficient because Mr. Wexler has alleged, in only conclusory terms, that the individual defendants conspired against him. *See Strickland v. United States*, 32 F.4th 311, 362 (4th Cir. 2022) ("'reject[ing] section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts'"); *King v. San Francisco Cmty. College Dist.*, 2011 U.S. Dist. LEXIS 128531, at *6-7 (N.D. Cal. Nov. 7, 2011) (dismissing § 1985 claim because plaintiff offered "only conclusory allegations that various groups of the individual defendants 'conspired to suppress rights'"). There are no specific allegations that give rise to a plausible claim of conspiracy.

c.    Tenth Cause of Action: Retaliation in Violation of First Amendment

Under 42 U.S.C. § 1983, a plaintiff may assert a cause of action for retaliation in violation of the First Amendment. The elements of such a claim are as follows: (1) the plaintiff engaged in constitutionally protected activity; (2) he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *See Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022); *see also Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

In his complaint, Mr. Wexler indicates that the protected activity in which he engaged was "expressing concerns about discriminatory treatment based on his Jewish identity and advocating for his right to equitable healthcare." Compl. at 19 (¶ 32). The adverse action, as alleged, was one or more of the individual defendants making "discriminatory and intimidating remarks . . . such as 'white people don't have anxiety'" and subjecting him to painful and unnecessary procedures. *See* Compl. at 19-20 (¶¶ 37-38). The problem for Mr. Wexler is that he has failed to sufficiently allege

9

that the individual defendants engaged in the adverse action *because* of his protected activity. Indeed, based on the allegations in the complaint, it appears that Mr. Wexler complained about the alleged discriminatory treatment *after* the discriminatory remarks were made, or that he complained about the inequitable treatment *after* it was provided. To state a retaliation claim, logically the protected activity must precede that alleged retaliation.

### 3. Leave to Amend

For the foregoing reasons, all of the federal causes of action pled by Mr. Wexler are dismissed. The only issue remaining is whether Mr. Wexler should be allowed to amend the federal claims. The Court shall not permit amendment because it would be futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."); *see also Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014).

In his opposition, Mr. Wexler had an opportunity to address why his claims are not futile, and he failed to demonstrate such. Mr. Wexler also could have demonstrated that his claims are not futile in his proposed first amended complaint ("FAC"), but again he failed to establish such. As noted above, his claims are fundamentally flawed because it is sheer speculation that the individual defendants intentionally subjected Mr. Wexler to painful and unnecessary procedures because of his race, ethnicity, or religion. Without some specific evidence supporting the claims, they are implausible.

### B. Motion to Amend

For the reasons stated above, the Court is not giving Mr. Wexler leave to amend the three federal claims discussed above. However, it recognizes that Mr. Wexler has also filed a motion for leave to amend in which he seeks to add new defendants to the case (Mona Bajestan and an unidentified x-ray technician) and to add new federal and state law claims.[5] In addition, he seeks to add new factual allegations to substantiate his claims, both those already asserted and those he seeks to add.

---

[5] It also appears that Mr. Wexler intends to drop one state law claim: the claim for intentional infliction of emotional distress.

United States District Court
Northern District of California

Federal Rule of Civil Procedure 15 governs amendments to pleadings. It provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to give leave to amend, a court considers the following factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended its complaint." *Western Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991). As noted above, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin*, 59 F.3d at 845.

The Court has reviewed the proposed first amended complaint ("FAC") – focusing in particular on the proposed new federal claims which are violation of 42 U.S.C. §§ 1981-82 (interference with the making/enforcement of contract), violation of § 1983 (torture under international treaties and/or the Constitution), and violation of the Affordable Care Act (discrimination). The proposed new federal claims are largely dependent on theories of discrimination and conspiracy already alleged. In his proposed FAC, Mr. Wexler still fails to plausibly plead either discrimination or conspiracy. He cites no specific evidence pushing his claims into the zone of plausibility.

The Court acknowledges that, arguably, the new proposed § 1983 claim (for torture in violation of international treaties and the U.S. Constitution) is not necessarily predicated on discrimination. However, that claim also lacks merit for independent reasons.

For instance, Mr. Wexler's suggestion that there was a plan to torture is speculative and borders on the fanciful. *See, e.g.*, Prop. FAC at 5 (¶¶ 35-38) (alleging that Dr. Komarisetty told Mr. Wexler that her husband works at Tesla but that, "[b]ased on the timing and context," he actually works at Neuralink, a biotechnology company that was founded by Elon Musk and that "has conducted controversial and invasive experiments on animals and humans, some of which have occurred by University of California facilities"; Dr. Komarisetty "exploited this connection to create an atmosphere of power and fear"); Prop. FAC at 7 (¶ 43) (alleging that Dr. Komarisetty did not need to take his blood pressure but did so "to determine whether Plaintiff could physically withstand the calculated torture from the deliberate puncturing of Plaintiff's cranial nerves in his mouth with her dental probe for no medical purpose but for her own gratification to inflict pain

United States District Court
Northern District of California

United States District Court
Northern District of California

that followed").

In addition, not all international treaties can serve as the basis for a § 1983 action, and Mr. Wexler has failed to show that the one he mentions (the Rome Statute) is such a treaty. *See Curtis v. Inslee*, 154 F.4th 678, 688 (9th Cir. 2025) (noting that only treaties that are "either self-executing or legislatively implemented . . . can confer enforceable rights under Section 1983"). To the extent Mr. Wexler has referred to the U.S. Constitution, he has not identified any specific provision as the basis for his claim, and the Eighth Amendment, which prohibits cruel and unusual punishment, sets a high bar. *Cf. Coston v. Nangalama*, 13 F.4th 729, 732 n.1 (9th Cir. 2021) (noting that, in the prison context, a "prisoner suffers cruel and unusual punishment when prison officials act with deliberate indifference to the prisoner's serious medical needs"). Again, any claim of wrongful conduct by the defendants sufficient to give rise to such a constitutional violation lacks a concrete factual basis and is instead fanciful and speculative.

### III. CONCLUSION

For the foregoing reasons, the Court grants the individual defendants' motion to dismiss the three federal claims pled in his original complaint and also denies the motion to amend to the extent Mr. Wexler seeks to add new federal claims. The Court does not adjudicate any of the state law claims, whether those pled in the original or proposed FAC, because it declines to exercise supplemental jurisdiction. If Mr. Wexler wishes to pursue his state law claims, he has the option of filing a new suit in state court.

The Court instructs the Clerk of the Court to enter a final judgment in accordance with the above and close the file in the case.

This order disposes of Dockets Nos. 29 and 37.

**IT IS SO ORDERED**.

Dated: February 11, 2026

_____
EDWARD M. CHEN
United States District Judge

12